1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   AMERICAN BOAT RACING                       No. 2:14-cv-1909-KJM-KJN
     ASSOCIATION,
12
                    Plaintiff,
13                                               ORDER AND FINDINGS AND
                                                 RECOMMENDATIONS
        v.
14
     BOB RICHARDS, JR., et al.,
15
16                  Defendants.

17

18   INTRODUCTION

19          Presently pending before the court is plaintiff American Boat Racing Association d/b/a H1

20   Unlimited's motion for default judgment against defendants Bob Richards, Jr. ("Richards");

21   BWW LLC ("BWW") and 41Live (collectively "defendants"), which are the only named

22   defendants in this action.  (ECF No. 13.)  After defendants failed to file an opposition to the

23   motion in accordance with Local Rule 230(c), the court vacated the February 19, 2015 hearing on

24   plaintiff's motion, requested supplemental briefing from plaintiff no later than March 5, 2015,

25   and provided defendants with an additional opportunity to oppose plaintiff's motion, including

26   the supplemental briefing, in writing no later than March 19, 2015.  (ECF No. 23.)  Thereafter,

27   plaintiff timely filed its supplemental briefing (ECF No. 27), but defendants again failed to

28   respond to the motion by the new required deadline.

                                                 1

For the reasons discussed below, the court now recommends that plaintiff's motion for default judgment be GRANTED IN PART on the terms outlined below.

BACKGROUND

Plaintiff, a non-profit corporation incorporated in the State of Washington and with its principal place of business in the State of Washington, commenced this diversity action against defendants, who are business entities and an individual based in California.  (See Complaint, ECF No. 1 ["Compl."] ¶¶ 1, 3-6; Declaration of Sam Cole, ECF No. 15 ["Cole Decl."] ¶¶ 3, 5-7, Exs. A-C.)  Plaintiff alleges that, around May 26, 2013, plaintiff and defendant 41Live entered into a "Race Agreement," whereby plaintiff granted to 41Live all of the rights to organize, promote, and stage a hydroplane race competition entitled "Big Wake Weekend" (the "Event"), which was scheduled to take place at Folsom Lake, California from May 31, 2013 to June 2, 2013.  (Compl. ¶ 8; Cole Decl. ¶ 13.)  The Race Agreement was signed by defendant Richards as "Event Director" on behalf of 41Live.  (Cole Decl. ¶ 13, Ex. D.)  In consideration for the grant of such rights, 41Live agreed to pay plaintiff a sum of $170,000.00 in installments, with the final installment due on June 2, 2013.  (Compl. ¶ 8; Cole Decl. ¶ 14, Ex. D.)  41Live also agreed to reimburse plaintiff for the premium related to a regatta liability insurance policy covering the Event, which plaintiff had paid in the amount of $18,851.00.  (Compl. ¶ 9; Cole Decl. ¶¶ 15-17, Ex. E.)  The Race Agreement provided that it "shall be governed by and construed in all respects in accordance with the laws of Washington State."  (Cole Decl. Ex. D.)

Subsequently, on or about June 2, 2013, and June 7, 2013, defendants tendered to plaintiff checks in the amounts of $20,000.00 and $25,000.00, respectively, in partial satisfaction of 41Live's obligations under the Race Agreement.  (Compl. ¶¶ 10-11; Cole Decl. ¶¶ 18-19, Exs. F, G.)  Both checks were drawn on the bank account of defendant BWW and were signed by defendant Richards.  (Cole Decl. ¶ 24.)  However, on June 19, 2013, the checks were dishonored for insufficient funds.  (Compl. ¶¶ 10-11; Cole Decl. ¶ 20, Ex. H.)  Plaintiff claims that although it has performed all of its obligations under the Race Agreement, no other amounts have been tendered or paid by defendants, despite plaintiff's repeated requests for payment.  (Compl. ¶¶ 12-13, 16; Cole Decl. ¶¶ 22-23.)

Plaintiff's complaint asserts causes of action for breach of contract, intentional misrepresentation, and statutory enforcement of dishonored checks against defendants. (Compl. ¶¶ 14-30.) The complaint seeks relief in the form of compensatory damages; prejudgment interest; punitive and exemplary damages; statutory damages for dishonored checks; and reasonable attorneys' fees and costs. (Compl. at 7.) The complaint asserts that defendants are jointly liable to plaintiff, because:

> there exists such a unity of interest between Defendants BOB RICHARDS, JR., on the one hand, and BWW LC and 41LIVE, on the other hand, that in fact BWW LLC and 41LIVE are alter egos of BOB RICHARDS, JR. Plaintiff is further informed and believes, and thereon alleges, that, at all times relevant herein, BOB RICHARDS, JR. has exercised unfettered control over the affairs of Defendants BWW LLC and 41LIVE and has failed to follow the record keeping and organizational requirements under California law imposed on limited liability companies such that BWW LLC and 41LIVE should not be recognized to exist as separate and independent legal entities. Assets belonging to all defendants named herein have been commingled or otherwise misappropriated by BOB RICHARDS, JR. leaving Defendants BWW LLC and 41LIVE undercapitalized.

(Compl. ¶ 7; see also Cole Decl. ¶ 24 [asserting that BWW and 41Live are "mere shells though which Richards carries on business and over which he exercises complete control"; that the address for BWW and 41Live is the same as the address for Richards's personal residence; and that the checks tendered in payment of 41Live's obligations under the Race Agreement were drawn on the bank account of BWW and signed by Richards].)

After plaintiff effectuated service of process on defendants on August 18, 2014 (ECF Nos. 6-8), defendants failed to respond to the complaint. As such, upon plaintiff's request, the Clerk of Court entered defendants' default on September 11, 2014. (ECF Nos. 9-11.) The instant motion for default judgment followed. (ECF No. 13.)

Plaintiff's motion for default judgment seeks compensatory damages for breach of contract; prejudgment interest; statutory damages for dishonored checks; and attorneys' fees and costs. Such relief was specifically requested in plaintiff's complaint. Plaintiff's motion does not seek the award of punitive or exemplary damages, or any other type of relief, based on plaintiff's claim for intentional misrepresentation.

3

1    LEGAL STANDARDS

2         Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party

3    against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend

4    against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not

5    automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans,

6    238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25

7    (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies

8    within the district court's sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.

9    1980).  In making this determination, the court considers the following factors:

>        (1) the possibility of prejudice to the plaintiff, (2) the merits of
>        plaintiff's substantive claim, (3) the sufficiency of the complaint,
>        (4) the sum of money at stake in the action[,] (5) the possibility of a
>        dispute concerning material facts[,] (6) whether the default was due
>        to excusable neglect, and (7) the strong policy underlying the
>        Federal Rules of Civil Procedure favoring decisions on the merits.

14   Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily

15   disfavored.  Id. at 1472.

16        As a general rule, once default is entered, well-pleaded factual allegations in the operative

17   complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc.

18   v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin.

19   Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs,

20   285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pleaded allegations in the

21   complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the

22   pleadings, and claims which are legally insufficient, are not established by default."  Cripps v.

23   Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d

24   1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir.

25   2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law);

26   Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not

27   be entered on a legally insufficient claim").  A party's default does not establish the amount of

28   damages.  Geddes, 559 F.2d at 560.

4

DISCUSSION

Appropriateness of the Entry of Default Judgment Under the Eitel Factors

      1.    *Factor One: Possibility of Prejudice to Plaintiff*

The first <u>Eitel</u> factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment.  <u>See</u> <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177.  Here, plaintiff would face prejudice if the court did not enter a default judgment, because plaintiff would be without another recourse against defendants.  Accordingly, the first <u>Eitel</u> factor favors the entry of a default judgment.

      2.    *Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint*

The court considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries.  The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought.  <u>See</u> <u>Danning</u>, 572 F.2d at 1388; <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1175.

Plaintiff's motion only seeks relief based on plaintiff's claims for breach of contract and statutory enforcement of dishonored checks.  The merits of each of those claims are addressed separately below.

Breach of Contract Claim

As an initial matter, the court considers whether, as plaintiff contends, Washington law applies to plaintiff's breach of contract claim.

As noted above, the Race Agreement specified that it "shall be governed by and construed in all respects in accordance with the laws of Washington State."  (Cole Decl. Ex. D.)  "In determining the enforceability of a choice of law provision in a diversity action, a federal court applies the choice of law rules of the forum state, in this case California."  <u>Hatfield v. Halifax PLC</u>, 564 F.3d 1177, 1182 (9th Cir. 2009).  The California Supreme Court has explained California's choice-of-law rules as follows:

    [T]he proper approach…is for the court first to determine either (1)

whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law.  If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law.  If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California.  If there is no such conflict, the court shall enforce the parties' choice of law.  If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue"…If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 466 (1992); see also Hatfield, 564 F.3d at 1182 (outlining and applying California choice-of-law rules).

In this case, the State of Washington has a substantial relationship to the parties, because it is plaintiff's state of incorporation and principal place of business.  Thus, there is also a reasonable basis for the parties' choice of law.  See Hatfield, 564 F.3d at 1183 ("The fact that Halifax is a United Kingdom company is sufficient to establish a substantial relationship between England and the parties, such that there is a reasonable basis for applying the English choice of law provision.").  Furthermore, defendants have not appeared and raised any fundamental policy conflict that could militate against application of Washington law to the contract; nor is the court aware of any such fundamental policy conflict.  Therefore, the court finds that the Race Agreement's choice-of-law provision should be enforced.

Under Washington law, the elements of a breach of contract claim are: (1) a contractual duty; (2) breach of that duty; (3) causation; and (4) damages.  See,e.g., Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus., 78 Wash. App. 707, 712-13 (1995) ("A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant.").  Here, plaintiff alleges that it has performed all its obligations under the Race Agreement by granting to 41Live the rights to organize, promote, and stage the Event; that 41Live has breached its duties under the Race Agreement by failing to pay to plaintiff the sums due under that agreement ($170,000.00 as payment for the grant of rights as well as $18,851.00 for reimbursement of the liability insurance premium, for a total of $188,851.00),

1   despite plaintiff's repeated requests for payment; and that 41Live's breach has caused plaintiff

2   damages in the amount of $188,851.00.  (Compl. ¶¶ 14-17.)  Additionally, plaintiff alleges that

3   defendants are jointly liable for 41Live's breach of contract, because there exists such a unity of

4   interest between defendants that 41Live and BWW are in fact mere alter egos of Richards.  (Id. ¶

5   7; see also Cole Decl. ¶ 24.)

6          Based on the above, the court concludes that plaintiff's breach of contract claim has merit

7   and is sufficiently pled.

8                      Claim for Statutory Enforcement of Dishonored Checks

9          Plaintiff also asserts a claim for statutory enforcement of dishonored checks under section

10  62A.3-515 of the Revised Code of Washington.  (Compl. ¶¶ 25-30.)  That statute provides, in

11  part, that:

12              If a check as defined in RCW 62A.3-104 is dishonored by
                nonacceptance or nonpayment, the payee or person entitled to
13              enforce the check under RCW 62A.3-301 may collect a reasonable
                handling fee for each instrument. If the check is not paid within
14              fifteen days and after the person entitled to enforce the check or the
                person's agent sends a notice of dishonor as provided by RCW
15              62A.3-520 to the drawer at the drawer's last known address, and if
                the instrument does not provide for the payment of interest or
16              collection costs and attorneys' fees, the drawer of the instrument is
                liable for payment of interest at the rate of twelve percent per
17              annum from the date of dishonor, and cost of collection not to
                exceed forty dollars or the face amount of the check, whichever is
18              less, payable to the person entitled to enforce the check. In addition,
                in the event of court action on the check, the court, after notice and
19              the expiration of the fifteen days, shall award reasonable attorneys'
                fees, and three times the face amount of the check or three hundred
20              dollars, whichever is less, as part of the damages payable to the
                person enforcing the check.
21

22  Wash. Rev. Code § 62A.3-515(a).  Based on that statute, plaintiff "seeks an order or orders

23  enforcing Defendants' obligations under the above-referenced checks" and awarding plaintiff its

24  "reasonable attorney's fees, prejudgment interest, and the statutory penalty allowed by

25  Washington law."  (Compl. ¶ 30.)

26          However, the court need not, and does not, determine whether plaintiff states a valid claim

27  for statutory enforcement of dishonored checks under Washington law, because, even assuming

28  arguendo the merit and sufficiency of such a claim, plaintiff cannot recover under both a claim

1  for breach of contract and a claim for statutory enforcement of dishonored checks in this case.

2  Generally, if an uncertified check is taken for an obligation and the check is dishonored, the

3  obligee may enforce either the instrument or the underlying obligation.  See Wash Rev. Code §

4  62A.3-310(b)(3); Pardee v. Jolly, 163 Wash. 2d 558, 570 (2008) ("If a check is dishonored and

5  the person entitled to enforce the check is the obligee of the obligation for which the check was

6  taken, the obligee may enforce either the instrument or the obligation.").[1]  In this case, because

7  the underlying obligation pursuant to the Race Agreement involves a significantly larger amount

8  of money than the two checks at issue (even when the potential statutory penalties and attorneys'

9  fees are considered), the court reasonably presumes that plaintiff, when faced with the choice,

10  would elect to recover under its breach of contract cause of action.

11  In light of the court's conclusion that plaintiff's breach of contract claim has merit and is

12  sufficiently pled, the second and third Eitel factors favor the entry of a default judgment.

13  3.  *Factor Four: The Sum of Money at Stake in the Action*

14  Under the fourth factor cited in Eitel, "the court must consider the amount of money at

15  stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at

16  1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D.

17  Cal. 2003).  Although the sum of money sought in this case is not insignificant, it bears a

18  relationship to the seriousness of defendants' conduct, given that defendants failed to pay any

19  portion of the $188,851.00 owed under the Race Agreement.  Under these circumstances, the

20  court concludes that this factor does not militate against the entry of a default judgment.

21  ////

22  ////

23

24  [1] To be sure, plaintiff has not sought double compensatory damages by requesting the total
amount due under the contract in addition to the face value of the dishonored checks.  Plaintiff
25  limits its requested relief under the statutory claim to statutory damages and attorneys' fees.
However, under applicable law, plaintiff must choose between enforcing the contract or the
26  checks.  Plaintiff provides no legal authority suggesting that plaintiff could nonetheless elect to
pursue certain forms of relief under the statutory claim in addition to the breach of contract claim,
27  as long as those forms of relief are not duplicative of relief sought under the breach of contract
claim.
28

8

4.    *Factor Five: The Possibility of a Dispute Concerning Material Facts*

Because the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default, there is no likelihood that any genuine issue of material fact exists.  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.  As such, the court concludes that the fifth Eitel factor favors a default judgment.

5.    *Factor Six: Whether the Default Was Due to Excusable Neglect*

In this case, there is simply no indication in the record that defendants' default was due to excusable neglect.  Accordingly, this Eitel factor favors the entry of a default judgment.

6.    *Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits*

"Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).  Accordingly, although the court is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

In sum, after weighing all the Eitel factors, the court concludes that plaintiff is entitled to a default judgment against defendants, and recommends that such a default judgment be entered. All that remains is a determination of the specific relief to which plaintiff is entitled.

Terms of the Judgment to Be Entered

After finding that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered.  Each form of relief requested by plaintiff is addressed separately below.

1                         *Compensatory Damages for Breach of Contract*

2        "A party injured by a breach of contract may recover all damages that accrue naturally

3 from the breach, including any incidental or consequential losses the breach caused." Floor

4 Express, Inc. v. Daly, 138 Wash. App. 750, 754 (2007).  Here, plaintiff has adequately shown that

5 it suffered damages when defendants, in breach of the Race Agreement, failed to pay plaintiff

6 $170,000.00 for the grant of rights related to the Event and $18,851.00 for reimbursement of the

7 liability insurance premium paid by plaintiff, for a total of $188,851.00.  As such, these

8 compensatory damages, which accrued naturally from defendants' breach, should be awarded.

9                                 *Prejudgment Interest*

10        Plaintiff further seeks an award of prejudgment interest based on its breach of contract

11 claim.  In particular, plaintiff seeks prejudgment interest at the rate of 12% per annum from June

12 2, 2013 (the date on which the last payment under the Race Agreement was due) until the date of

13 entry of judgment.

14        "Prejudgment interest in a diversity action is…a substantive matter governed by state

15 law." U.S. Fid. & Guar. Co. v. Lee Invs. LLC, 641 F.3d 1126, 1139 (9th Cir. 2011).  For the

16 reasons outlined above, the Race Agreement's choice-of-law provision is enforceable, and

17 Washington law thus applies to plaintiff's breach of contract claim and relief sought pursuant to

18 that claim.  Under Washington law, a court "may award a party prejudgment interest when the

19 claimed amount is 'liquidated' or when an unliquidated claim is otherwise determinable by

20 reference to a fixed contractual standard, without reliance on opinion or discretion." Forbes v.

21 Am. Bldg. Maint. Co. West, 170 Wash. 2d 157, 166 (2010).  Because no specific interest rate was

22 specified in the Race Agreement, Washington's statutory interest rate of 12% applies to the

23 calculation of prejudgment interest.  See Wash. Rev. Code § 19.52.010(1) ("Every loan or

24 forbearance of money…shall bear interest at the rate of twelve percent per annum where no

25 different rate is agreed to in writing between the parties"); TJ Landco, LLC v. Harley C.

26 Douglass, Inc., 2015 WL 968774, at *3 (Wash Ct. App. March 5, 2015) ("When a party breaches

27 ////

28 ////

1   an obligation to pay a liquidated debt, a new forbearance is created…The creation of the new

2   forbearance triggers application of the prejudgment interest statute.").[2]

3        In this case, because the compensatory damages from the breach of contract are readily

4   determinable by reference to the Race Agreement ($188,851.00), the amount of prejudgment

5   interest can likewise be calculated without reliance on opinion or discretion.  Therefore, the court

6   recommends that plaintiff be awarded prejudgment interest at the rate of 12% per annum from

7   June 2, 2013, until the date of entry of judgment.

8                    *Costs*

9        Plaintiff also seeks an award of costs in the amount of $576.25 – in particular a $400.00

10  court filing fee and $176.25 in costs for service of process.  (ECF No. 20 at 7.)  Plaintiff seeks

11  such costs pursuant to Washington law.  However, federal law governs the award of costs even in

12  a diversity action.  DCI Solutions Inc. v. Urban Outfitters, Inc., 2012 WL 1409610, at *2 (S.D.

13  Cal. Apr. 23, 2012) (citing Aceves v. Allstate Ins. Co., 68 F.3d 1160, 1167 (9th Cir. 1995)).

14  Nevertheless, because federal law permits the court filing fee and service of process expenses to

15  be recovered as costs, the court recommends that plaintiff be awarded the $576.25 in costs.

16                 *Statutory Damages and Attorneys' Fees*

17       Plaintiff's requests for statutory damages ($300.00 per check for a total of $600.00) and

18  attorneys' fees ($10,110.00) are based entirely on its claim for statutory enforcement of

19  dishonored checks.  (Compl. at 7.)  In light of the court's analysis above, plaintiff cannot recover

20  on that claim in addition to recovering under the breach of contract claim.  Furthermore, plaintiff

21  does not contend that the Race Agreement itself somehow provides for the recovery of attorneys'

22  fees in the event of breach of contract.  Therefore, statutory damages and attorneys' fees cannot

23  be awarded.

24  ////

25  ////

26  _____

27  [2] Plaintiff incorrectly relies on Wash. Rev. Code § 4.56.110 for an award of prejudgment interest,
    because that statute actually addresses postjudgment interest.  See TJ Landco, LLC, 2015 WL
28  968774, at *7 n.5.  However, because the same interest rate applies here under either statute, the
    error was harmless.

*Postjudgment Interest*

Finally, in plaintiff's supplemental briefing in support of its motion, plaintiff contends that, pursuant to Washington law, plaintiff is entitled to postjudgment interest at the rate of 12% per annum.  (ECF No. 27 at 8-9.)  However, "[i]t is settled that even in diversity cases post-judgment interest is determined by federal law" in accordance with 28 U.S.C. § 1961.  Northrop Corp. v. Triad Int'l Mktg. S.A., 842 F.2d 1154, 1155 (9th Cir. 1988); see also Am. Tel. & Tel. Co. v. United Computer Sys., Inc., 98 F.3d 1206, 1209 (9th Cir. 1996).  Consequently, any postjudgment interest must be computed under federal law.

CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.      Plaintiff's motion for default judgment (ECF No. 13) be GRANTED IN PART.

2.      Judgment be entered in plaintiff's favor and against defendants.

3.      Plaintiff be awarded compensatory damages for breach of contract in the amount of $188,851.00.

4.      Plaintiff be awarded prejudgment interest at the rate of 12% per annum from June 2, 2013, until the date of entry of judgment, with any postjudgment interest accruing thereafter in accordance with federal law.

5.      Plaintiff be awarded costs in the amount of $576.25.

6.      The Clerk of Court be directed to close this case.

IT IS ALSO HEREBY ORDERED that plaintiff shall forthwith serve a copy of this order and findings and recommendations on defendants by U.S. mail at their last-known address(es).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may

1    waive the right to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th

2    Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

3            IT IS SO ORDERED AND RECOMMENDED.

4    Dated:  March 24, 2015

5

6                                                                KENDALL J. NEWMAN
                                                                 UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28